UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

JOHN ROBERT TORY            )
                            )
    *Petitioner*,           )
                            )
v.                          )   No. 3:05-cv-169
                            )   *Jordan*
                            )
HOWARD CARLTON, Warden      )
                            )
    *Respondent*.           )

## **MEMORANDUM**

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner John Robert Tory ("Tory"). The matter is before the court on the motion to dismiss filed by the Attorney General for the State of Tennessee on behalf of the respondent. For the following reasons, the respondent's motion to dismiss [Court File No. 7] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**.

I.   Standard of Review

Under Rule 8 of the RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that Tory is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986); *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983).

II.   Factual Background

The Attorney General has provided the court with copies of the state court record on direct appeal and in post-conviction proceedings. [Court File No. 7, Notice of Filing Documents attached to Answer and Motion to Dismiss, Addenda 1-11]. Tory was convicted by a jury in Knox County, Tennessee, of first-degree felony murder and especially aggravated robbery; he was sentenced to consecutive prison terms of life and 22 years, respectively. On direct appeal, Tory challenged his conviction for especially aggravated robbery and his consecutive sentence. The Tennessee Court of Criminal Appeals affirmed. *State v. Tory*, No. 03C01-9306-CR-00202, 1994 WL 398808 (Tenn. Crim. App. August 3, 1994) [Addendum 6], *perm. app. denied, id.* (Tenn. November 28, 1994).

The Tennessee Court of Criminal Appeals, on direct appeal, gave the following summary of the case and the evidence at trial:

> Late in the afternoon on August 31, 1990, the body of Michael R. White was discovered in the house in which he lived in Knox County, Tennessee. He had been shot twice and the house had been ransacked. Law enforcement officers were summoned to the house and the investigation ensued. A fingerprint lifted at the scene of the crime matched that of the defendant. A search was conducted of the defendant's residence pursuant to a search warrant and other evidence linking the defendant to this crime was obtained. Subsequently, the defendant gave statements in which he admitted his involvement in the robbery and killing of the victim.
>
> ...
>
> We now review the evidence presented at trial. The victim was found dead in the living room of his home. He had been shot twice. One bullet entered his side, passed through his body, and was found near the wall where he lay. The second bullet entered his neck and exited his head and that bullet was also found near his body. Two spent nine millimeter cartridges were found on the floor near his body. The house was ransacked, and someone had climbed into his attic by stepping upon the washer and dryer and entering through an opening in the ceiling. No one in the neighborhood had noticed anything unusual or heard the shots.
>
> Fingerprints were lifted from the washing machine in the home. The law enforcement personnel investigating this matter received some information that the defendant might have been involved in the murder. His fingerprint matched up with one found on the washer. The police interviewed the defendant's sister who told them that the defendant had discussed with her, some six weeks earlier, the possibility of robbing the victim. A search warrant was obtained for the defendant's residence and was executed while the defendant was present. During the search, police found and seized three sets of "black Ninja-type clothing," including two hoods, a tee-shirt and other items of clothing, nine millimeter and .38 caliber ammunition, and a sawed-off shotgun.
>
> The defendant was taken into custody and, after being advised of his constitutional rights and signing a waiver of same, he was questioned at some length. Several witnesses testified at the trial. The victim's friend who

3

discovered his body testified and described the scene as he had found it. Two Knoxville police officers testified concerning the lifting of the fingerprint from the washer and matching that print with the defendant's.

The defendant's sister testified that the defendant had approached her and asked her to help him gain entry into the victim's residence so he could rob him. She said that she was a friend of the victim's and the defendant knew that the victim would let her in the house. She further said the defendant had discussed this with her on several occasions over a period of about six weeks prior to the crime.

John David Brown testified that he was a friend of the defendant and the defendant's sister, and that he knew the victim. He stated that at least a month prior to the crime, the defendant had approached him about driving the defendant and another individual to the victim's house, whereupon the defendant's sister would gain them entry in the house so that the defendant and the other individual could rob the victim. He further stated that they tried on several occasions to convince him to join them but he refused.

Detective Thomas Michael Cheaves of the Knox County Sheriff's Department testified concerning the scene of the crime, the location of the body, bullets, spent cartridges and the general condition of the victim's residence. Additional photographs were introduced through his testimony. He was the officer who obtained and executed the search warrant and the items seized pursuant to the warrant were introduced as evidence through his testimony.

Detective Cheaves summarized the first statement that the defendant gave him essentially as follows: The defendant owed some drug dealers a large amount of money which he had been unable to pay. He told the drug dealers that the victim kept a large sum of money in his residence and that they could get the money from the victim. He stated that these other two individuals had shot and killed the victim before he (the defendant) entered the residence and that they asked him to come in and help look for the money. He stated that he had climbed up on the washing machine to look in the attic and that was how his fingerprint got there.

Detective Cheaves further testified that the next day he again questioned the defendant and that the defendant gave a statement which differed from his earlier one. Detective Cheaves summarized this statement as follows: The defendant, Jerry Dickerson, and Steve Clark had gone to the

4

victim's residence for the purpose of robbing him of a large sum of money that they thought he had in the residence. They gained entry into the victim's house with the help of a female that he knew only by the nickname of "Cynt", and that Jerry Dickerson shot the victim.

The detective stated that he left the defendant alone in the room for a few minutes and that when he came back, the defendant wanted to make a further statement. He said the defendant told him at that point that everything he had just previously told him was true except for the fact that it was the defendant who had entered the residence with the nine millimeter pistol and that he (the defendant) had shot Mr. White twice while in the residence. At that point the detective recorded a statement from the defendant, which statement was transcribed and played for the jury to hear.

The tape recorded statement heard by the jury is summarized as follows:

On August 31, 1990 at about 3:00 in the morning, Steve Clark, Jerry Dickerson and the defendant followed a female to the victim's house. The reason they went to the house was to rob the victim. Defendant and his two associates wore black Ninja-type hoods and the defendant was armed with a nine millimeter semi-automatic pistol. The female went to the door and rang the doorbell. When the victim opened the door, the female entered the residence and the defendant and his two associates charged through the door before it closed. The victim backed up across the room and the defendant shot him in his right side. When the victim fell to the floor, the defendant pointed the gun downward at him and one of the other two said "shoot him." He then stated "I didn't know what to do and then the next thing I know, I had shot him but I didn't know where at." The defendant stated that the victim was still breathing when he shot him the second time. He then stated that they searched the house and took between two and three thousand dollars in cash of which the defendant got about $800.00. Defendant further stated that they had planned this robbery for about a month but that he did not intend to kill the victim.

Detective Cheaves testified that the defendant told him that the tee-shirt which had been found during the search of Defendant's residence was the shirt he had worn on the night he shot the victim. This shirt had blood on it and was introduced into evidence.

5

Dr. David Douglas Wilson, M.D. testified that he was employed at the University of Tennessee Hospital in Knoxville as a pathologist. He testified concerning the path of the bullets through the body. He further testified that he could not ascertain which wound occurred first, but that the wound which entered through the side of the victim would have had a very low chance of being fatal. He stated that the wound to the head would have been immediately fatal. He further testified that the paths of the bullets would be consistent with the wound to the side coming while the victim was standing and that the wound to the head would be consistent with the victim being shot while he was on the floor.

At that point, the state rested its case.

The defendant, against the advice of counsel, testified in his defense. The defendant testified that everything on the tape which was played to the jury was true, "except for that I didn't shoot Michael White." He said that he had told Detective Cheaves that he did the shooting because Steve Clark had threatened to kill his family if he (the defendant) did not admit to being the actual trigger man. He stated that when they got there, Steve Clark shot the victim and that they then searched the house while Steve stood by the defendant with a gun. After they searched the house and about the time the defendant exited the house onto the porch, he heard the second shot fired by Mr. Clark. The defendant had no explanation as to how the blood could have gotten on his shirt.

The defendant stated that he had planned to rob the victim because he owed a drug dealer ten thousand dollars which he was unable to pay. He stated that he originally owed the money to a "Cuban dude named Sam", but Steve Clark had paid the "Cuban dude," because the three of them that committed the robbery were dealing in drugs together.

The defendant put on no further proof.

*Id.*, slip op. at 2-7, 1994 WL 398808 at **1-4.

Tory next filed a state petition for post-conviction relief, which was denied after argument of counsel, and the Tennessee Court of Criminal Appeals affirmed. *Tory v. State*, No. E2003-00019-CCA-R3-PC, 2003 WL 23021389 (Tenn. Crim. App. December 29, 2003) [Addendum 11], *perm. app. denied, id.* (Tenn. November 29, 2004).

In support of his habeas corpus petition, Tory alleges the following grounds for relief: (1) he was denied due process and the equal protection of the law at trial and in post-conviction proceedings; (2) he was twice placed in jeopardy for the same offense; (3) he received ineffective assistance of counsel; (4) he was subjected to prosecutorial misconduct; (5) he was subjected to the judicial abuse of discretion; (5) he received cruel and unusual punishment; and (7) the indictment was multiplicitous. The Attorney General contends the respondent is entitled to judgment as a matter of law based upon procedural default and upon the findings of the Tennessee state courts.

III. <u>Procedural Default</u>

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See*

*also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Tory cannot file another state petition for post-conviction relief. TENN. CODE ANN. § 40-30-102(a). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

It is well established that a criminal defendant who fails to comply with state procedural rules which require the timely presentation of constitutional claims waives the right to federal habeas corpus review of those claims "absent a showing of cause for the non-compliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). *Accord Engle v. Isaac*, 456 U.S. 107, 129 (1982) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.").

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

Tory's claims of prosecutorial misconduct or multiplicitous indictment were never presented to the Tennessee courts, either on direct appeal or in post-conviction proceedings. Tory did raise, in his post-conviction petition, his claim of double jeopardy. The Tennessee Court of Criminal Appeals, however, found that Tory had waived that claim by failing to raise it on direct appeal. Tory has given no reason to excuse his default. As Tory lacks cause for his state procedural default, this court need not consider whether he would be prejudiced by his inability to raise the claims in these proceedings. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991); *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Supreme Court rejected proposition that showing of prejudice allows relief in the absence of cause).

Accordingly, Tory has procedurally defaulted these three claims and the court lacks jurisdiction to consider them. With respect to the remaining claims for relief, the Attorney General contends the respondent is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

IV.     State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Tory may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless

the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court. In addition, findings of fact by a state court are presumed correct and Tory must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

V.   <u>Discussion of Remaining Grounds for Relief</u>

   *A. Denial of Due Process and Equal Protection*

Tory is apparently claiming, as he did in the state courts, that his convictions for both first degree felony murder and especially aggravated robbery violated his right to due process. The Tennessee Court of Criminal Appeals framed the issue as follows:

> The defendant argues on appeal that a conviction of especially aggravated robbery and felony murder, based on the same facts, violates the due process provisions of the Tennessee and United States Constitutions.
>
> Defendant does not base his argument on the constitutional protection from double jeopardy. He acknowledges that Tennessee law allows convictions of both felony murder and the underlying felony. He further concedes that it would be proper to convict for aggravated robbery and felony murder but argues that the conviction of both felony murder and especially aggravated robbery violates his due process rights. He argues that serious bodily injury is necessary to elevate the aggravated robbery to especially aggravated robbery and that serious bodily injury is an essential part or element of felony murder. Because a victim can't be killed without suffering serious bodily injury, he argues that serious bodily injury is essentially incidental to the murder.

*State v. Tory*, slip op. at 7-8, 1994 WL 398808 at 4 (citation omitted). The appellate court then rejected Tory's argument:

> Defendant argues that because the element of serious bodily injury to the victim prior to his death was a part of the murder conviction, then that same element cannot be used to elevate the aggravated robbery to especially aggravated robbery. We disagree with Defendant's reasoning. The fact that the victim died was the element needed to establish the conviction for felony murder. Whether the defendant did the shooting in the manner he described in his taped statement, or the other individual did the shooting as he testified in his defense at trial, serious bodily injury had already been inflicted upon the

11

> victim prior to the fatal shot to his head. Even if the second shot had not been fired, or if this victim had not died, the offense of especially aggravated robbery had been completed.
>
> ...
>
> In summary, the facts contained in this record are clearly sufficient to support the conviction of especially aggravated robbery based upon the use of the deadly weapon and the victim suffering serious bodily injury. The felony murder conviction is warranted by the additional fact that the victim died. The Legislature intended that multiple punishments be imposed on conviction of a defendant for felony murder and for the underlying felony.

*Id.*, slip op. at 9-10, 1994 WL 398808 at *5 (citation omitted).

Tory has failed to rebut, by clear and convincing evidence, the findings of the state courts and they are presumed correct by this court. In addition, this court has reviewed the trial transcript [Court File No. 7, Addendum 2, Transcript of the Evidence, Vol. I-II, pp. 70-164]; the foregoing findings by the Tennessee Court of Criminal Appeals are supported in the record. That being so, this court concludes that the appellate court's determination that Tory's right to due process was not violated was neither contrary to, nor did it involve an unreasonable application of, federal law. *See Albernaz v. United States*, 450 U.S. 333, 344 (1981) (noting the availability of cumulative punishments "directed to separate evils"). Accordingly, Tory is not entitled to habeas corpus relief on this claim.

Tory also claims he was denied his rights to due process and equal protection during his post-conviction proceedings, in that he was not present at the evidentiary hearing. Such a claim, however, is not cognizable in federal habeas proceedings.

> Section 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief

> proceeding. Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition.

*Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990) (citations omitted). *See also Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986); *Williams v. State of Missouri*, 640 F.2d 140, 143 (8th Cir. 1981).

### B. Ineffective assistance of counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Tory must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls

13

within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.* at 691-92.

Tory claims he received ineffective assistance of counsel based upon his attorney's failure to request a jury instruction on lesser included offenses of felony murder. In considering this claim in post-conviction proceedings, the Tennessee Court of Criminal Appeals noted that, at the time of Tory's conviction, "second degree murder was not recognized as a lesser included offense of felony murder." *Tory v. State*, slip op. at 2, 2003 WL 23021389 at *2 (citing *State v. Gilliam*, 901 S.W. 2d 385, 390-91 (Tenn. Crim. App. 1995)).

The appellate court also noted that the standard of review for considering claims of ineffective assistance of counsel is the two-part test set forth in *Strickland*. *Id.*, slip op. at 3, 2003 WL 23021389 at *2. The court then concluded that the failure of Tory's attorney to anticipate a change in the law did not constitute ineffective assistance of counsel under *Strickland*. *Id.*

That conclusion was neither contrary to, nor did it involve an unreasonable application of, federal law as established in *Strickland*. *See Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) ("'Only in a rare case' will a court find ineffective assistance of counsel based upon a

trial attorney's failure to make an objection that would have been overruled under the then-prevailing law.") (citing *Brunson v. Higgins*, 708 F.2d 1353,1356 (8th Cir.1983) ("The failure to anticipate a change in the law will not generally constitute ineffective assistance of counsel.")). Accordingly, Tory is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel.

### C. *Judicial Abuse of Discretion*

Tory also claims the trial court erred in failing to instruct the jury on lesser included offenses. As noted previously, at the time of Tory's conviction, second-degree murder was not recognized as a lesser included offense of felony murder. For that reason, the Tennessee Court of Criminal Appeals found "that there was no trial error in omitting an instruction on second degree murder." *Tory v. State*, slip op. at 2, 2003 WL 23021389 at *2. That conclusion was neither contrary to, nor did it involve an unreasonable application of, federal law. *See Hopkins v. Reeves*, 524 U.S. 88, 95-97 (1998) (defendant was not entitled to an instruction on second-degree murder when second-degree murder was not a lesser included offense of felony murder under state law.). Accordingly, Tory is not entitled to habeas relief on this issue.

## D. *Cruel and Unusual Punishment*

Tory claims he was subjected to cruel and unusual punishment. Apparently, Tory is referring to the fact that his 22-year sentence for especially aggravated robbery was ordered to be served consecutively to the life sentence for felony murder, an issue that was considered and rejected on direct appeal:

> Consecutive sentences may be imposed in the discretion of the trial court if the court finds by a preponderance of the evidence that one or more of the following criteria exists:
>
> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

16

>           (6) The defendant is sentenced for an offense committed
>     while on probation; or
>
>           (7) The defendant is sentenced for criminal contempt.
>
>     The trial judge ordered consecutive sentences based upon his finding that this defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high.
>
>     In addition to the facts which constituted the elements of the crime, the court found that the defendant was the leader in regard to this offense, had planned it for weeks and had recruited or attempted to recruit other individuals to assist him in completing the crime. Although the defendant was only nineteen years old at the time the offense was committed, the record clearly establishes that he had become a substantial dealer in drugs. The trial court discounted Defendant's testimony at trial in which he testified that he had not shot the victim. The record establishes that the killing of the victim was not necessary to effectuate the robbery, because the victim had already been disabled.
>
>     The circumstances surrounding the commission of the offense were aggravated. Even though the defendant was young, he had a somewhat substantial criminal record, and the only employment reflected in the record is being a drug dealer. The aggregate length of the sentences reasonably relates to the offenses of which the defendant stands convicted.
>
>     We conclude that the record supports the finding of the trial judge that the defendant is a dangerous offender. We further cannot find that the trial court abused its discretion in ordering the sentences to be served consecutively.

*State v. Tory*, slip op. at 11-13, 1994 WL 398808 at **6-7 (quoting Tenn. Code Ann. § 40-35-115(b) (1990)) (citations omitted).

The conclusions of the state courts that Tory was subject to consecutive sentences were neither contrary to, nor did they involve an unreasonable application of, federal law. *See Albernaz v. United States*, 450 U.S. 333, 344 (1981) (consecutive sentences are

17

permissible when authorized by the legislature). Accordingly, Tory is not entitled to relief on his claim of cruel and unusual punishment.

VI.    Conclusion

Petitioner Tory is not entitled to habeas corpus relief and for that reason the respondent's motion to dismiss will be **GRANTED**. Tory having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c). The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the FEDERAL RULES OF APPELLATE PROCEDURE.

**AN APPROPRIATE ORDER WILL ENTER.**

                                                      s/ Leon Jordan
                                           United States District Judge